## Case No. 160.

### In re ALEXANDER.

[Chase, 295;[1] 3 N. B. R. 29, (Quarto, 6;) 8 Amer. Law Reg. (N. S.) 423; 2 Amer. Law T. Rep. Bankr. 81; 16 Pittsb. Leg. J. 91; 2 Balt. Law Trans. 759.]

Circuit Court, D. Virginia. May Term, 1869.

CIRCUIT COURTS — APPELLATE JURISDICTION IN BANKRUPTCY CASES—DISCRETION OF COURT.

1. The jurisdiction of superintendence conferred upon the circuit court by the second section of the bankrupt act, must be exercised over proceedings in bankruptcy already pending in the district court, and it seems to be a reasonable interpretation that it does not extend to decisions of the district court from which appeals may be taken.

2. By the eighth section of the bankrupt act appellate jurisdiction is given to the circuit court in four classes of cases: 1. By appeals in cases in equity decided in the district court, under the jurisdiction created by the act; 2. By writ of error in cases at law decided in the exercise of that jurisdiction; 3. By appeal from decisions rejecting wholly or in part the claims of supposed creditors; and 4. By appeal from decisions allowing such claims.

[Cited in Knight v. Cheney, Case No. 7,883.]

3. The suits belonging to the first two classes of cases seem to be those of which concurrent jurisdiction is given to the circuit and district courts by the eighth section; for no jurisdiction of cases at law or in equity relating to the estate, rights, or liabilities of the bankrupt is expressly given to the district court elsewhere than in the third clause of the second section; though this jurisdiction may be well enough held to be included in the general grant of the first section.

[Cited in Re Norris. Case No. 10,304; In re Brinkman, Id. 1.884; Goodall v. Tuttle, Id. 5,533; Johnson v. Price, Id. 7,407.]

4. The appellate jurisdiction, strictly so called, conferred upon the circuit courts, is limited to controversies between assignees and the claimants of adverse interests, and to controversies between assignees and creditor-claimants, touching the allowance of claims.

[Cited in Norton v. Barker, Case No. 10,349. Followed in York's Case, Id. 18,139.]

5. The right of appeal, as given by the statute, can neither be enlarged nor restricted by the district or the circuit court. The regulation of appeals is a regulation of jurisdiction. The circuit court has no jurisdiction of any appeal, in any case, under the bankrupt act, from the district court, unless it is claimed, and the bond is filed at the time it is claimed, and notice of it is given, as required by the eighth section of the act, within ten days after the entry of the decree or decision appealed from; or unless it is entered at the term of the circuit court first held within and for the proper district next after the expiration of the ten days from the time it was claimed.

[Cited in Benjamin v. Hart. Case No. 1,302; Judson v. Courier Co., 25 Fed. Rep. 709. Limited in Baldwin v. Rapplee, Case No. 802.]

6. The only construction which gives due effect to all parts of the act relating to revisory jurisdiction seems to be that which on the one hand excludes from the category of general superintendence and jurisdiction of the circuit court the appellate jurisdiction defined by the eighth section; and, on the other, brings within that category all decisions of the district court or the district judge at chambers, which can not be reviewed upon appeal or writ of error under the provisions of that section.

[Cited in Gilbert v. Quimby. 1 Fed. Rep. 111; Sweatt v. Boston, etc., R. Co., Case No. 13,684; In re York & Hoover, Id. 18,139; Barstow v. Peckham. Id. 1,064. Distinguished in Gilbert v. Quimby, 1 Fed. Rep. 114.]

7. The exercise of this jurisdiction is left to the sound discretion of the circuit courts.

[8. Cited in The Norris' Case, Case No. 10,304, to the point that under section 2 a party may elect to proceed in bankruptcy or otherwise.]

[9. Cited in Sutherland v. Kellogg, Case No. 13,641, to the point that before the circuit court can take jurisdiction, the petition must show wherein the error of the ruling, complained of, consists.]

In bankruptcy. John D. Alexander was duly adjudicated a bankrupt on his own petition, and filed the usual schedules of his debts and assets. Among the debts was a judgment due Bagley, which judgment had been duly docketed under the law of Virginia in the counties where the real estate of the bankrupt lay, and thereby became a lien on such real estate. With a large number of other debts, was one due Miller, by three bonds, each for seventeen thousand dollars. dated December 24, 1864, and payable from five to six years after date. These bonds were endorsed by John Alexander, the son of the bankrupt, and were secured by a deed of trust on a plantation sold by Miller to Alexander, which deed was of even date with the bonds, and was given simultaneously with the sale, and of course were the first

---

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

lien on the property. John Alexander had a lease of this plantation from his father, which would expire, if proper notice was given, on the first day of January, 1870, six months' notice being necessary to oust this tenant. The assignee of the bankrupt filed a petition to sell the real estate, free and discharged from all encumbrances. On this petition Bagley showed cause against granting it until the bonds held by Miller were scaled down to their alleged proper value in legal money, they having been executed December 24, 1864, at a time when one gold dollar was worth sixty dollars of Confederate currency, and when the bonds would fall due, that currency would be utterly worthless. He claimed that the bonds must be either reduced to their gold value as of the date of their execution, or else must be considered as payable in a worthless currency, and therefore be now adjudicated as having no value, and therefore constituting no lien on the plantation covered by the deed of trust. If this was established, of course Bagley's judgment would become valuable as a valid lien on valuable property. John Alexander also showed cause, and claimed that the bonds held by Miller, and endorsed by him, should be scaled according to Bagley's contention—whereby he either would be relieved from all responsibility on them, or that by the great reduction they would undergo by the scaling process, the property would produce more than enough to pay them, and thus relieve him. It was shown that at the present or any past value of the plantation it would not bring more than twelve thousand dollars, never having brought or been valued at more than that in gold times. Alexander also claimed that any order of sale ought expressly to reserve his rights under the tenancy, or that he ought to be compensated for ousting him therefrom, out of the first proceeds of the real estate, before Miller's deed of trust.

Miller, on the other hand, appeared and consented to the sale, but claimed to have the first lien under his deed of trust for fifty-one thousand dollars, and interest from December 24, 1864, in lawful money of the United States. It was admitted that the value of the plantation before or during the war never exceeded twelve thousand dollars on a gold standard; but he contended that the purchase of the plantation at that price, payable at rates so far in the future, was a contract of hazard, in which he took the chance that the currency in existence when the bonds became payable would be more valuable than it was when they were made, and that the Alexanders, father and son, assumed the hazard that it would be less so. He claimed that the bonds were payable in the currency in existence when they fell due.

The district judge refused to scale the bonds, and on March 16, 1869, passed an order directing a sale of the estate, allowing Miller to bid and pay his bonds at their full value on account of the purchase money, in case he purchased it, as it was almost certain he would do. From this order the assignee appealed, on the solicitation of Bagley and Alexander, who gave him security against costs of the appeal, and agreed to furnish also the appeal bond required by law. Not having been able to do so within the ten days required by the statute, these proceedings having taken place at Alexandria, in chambers, while they were all required to be entered in the clerk's office in Richmond, while the estate and the parties were in and near Lynchburgh, the district judge extended the time for filing the bond, and it was duly approved and filed within the time thus extended. Bagley and Alexander were thus satisfied that their rights were perfectly protected by the supersedeas of the bond and by the appeal which would ensue on adjudication by the circuit court, then about to meet.

After that court had been in session several days, the parties always considering themselves as the parties prosecuting the appeal, and substantially interested in it, after the court had adjourned one day, and the appeal was to be heard the next, the assignee informed them that he had authorized the counsel for Miller to move in his (the assignee's) name for the dismissal of the appeal. Thereupon they prepared a petition, setting forth the facts that the time for appeal had expired, and they were helpless unless the circuit court would supervise these proceedings under the power given in the second section of the bankrupt act.

For the petitioners, Bagley and Alexander, Bradley T. Johnson moved for leave to file this petition, and for an order restraining the district court from proceeding further in the matter until this court had heard and determined the cause. He urged that the petitioners had been taken by surprise, and if they were obliged to wait until this court issued an order commanding the assignee and Miller to appear and answer the charges in the petition—the assignees would in the meantime act in concert with Miller, as they had done before; would sell and convey the property to Miller, under the unrescinded or unsuperseded order of the district court—and the supervision of this court be thus rendered nugatory.

L. H. Chandler and Charles Dabney, for Miller, showed cause why the petition should not be filed.

CHASE, Circuit Justice. A petition has been presented to the court by P. C. Bagley and John Alexander, for the revision of an order of the district court. It appears that among the assets of the bankrupt was a tract of land, encumbered by a deed of trust,

executed by him on December 24, 1864, in favor of William D. Miller, to secure the payment of three bonds, each for seventeen thousand dollars, payable in four, eight, and twelve years from date, respectively; that the petitioner, Alexander, is tenant of the tract, under the assignee, claiming a term which will not expire until January 1, 1870; and that the petitioner, Bagley, holds a judgment, which is a lien on the real estate of the bankrupt, and is claimed to be the next lien after the deed of trust. On March 16, 1869, the district court made two orders, one directing the assignee to sell the land, and the other directing that Miller might become the purchaser, and that the assignee should receive the amount of his bid in the trust bonds at par. The petitioners as soon as these orders came to their knowledge prayed an appeal in the name, and with the approval of the assignee, and immediately notified Miller and the clerk of the district court of their appeal. The time for filing the bond on appeal was extended by the order of the district judge until April 18, and on the 14th an order was passed showing that the assignee had filed his bond in the penalty of ten thousand dollars. On May 6, the assignee informed the counsel for the petitioners that he would not allow the use of his name in the prosecution of this appeal. The petitioners, therefore, ask in consideration of the surprise occasioned to them by this information, and also upon the ground that an appeal from the order of the district judge in such a case as that before him is not allowed by the act, that the court will give them leave to file their petition now presented and grant them appropriate relief. The petition invokes the exercise of the jurisdiction of superintendence, conferred upon the circuit courts by the second section of the bankrupt act, which provides that "the several circuit courts within and for the district where the proceedings in bankruptcy shall be pending, shall have a general superintendence and jurisdiction of all cases and questions arising under this act; and, except when special provision is otherwise made, may, upon bill, petition, or other proper process of any party aggrieved, hear and determine the case as a court of equity."

In the consideration of this petition it becomes necessary to ascertain, if possible, the nature and extent of the jurisdiction thus conferred. It is clear that it must be exercised over proceedings in bankruptcy already pending in the district court, and it seems to be a reasonable interpretation that it does not extend to decisions of the district court from which appeals may be taken. By the eighth section, appellate jurisdiction of such decisions was conferred upon the circuit court in four classes of cases: 1. By appeal in cases in equity decided in the district court, under the juris-

diction created by the act; 2. By writs of error in cases at law, decided in the exercise of that jurisdiction; 3. By appeal from decisions rejecting wholly or in part the claims of supposed creditors; and, 4. By appeal from decisions allowing such claim. In the first two classes of cases, the appeal or writ of error is given to the unsuccessful party to the suit, whether in equity or at law; in the third class it is given to the dissatisfied creditor; in the fourth to the dissatisfied assignee. The suits belonging to the first two classes of cases seem to be those of which concurrent jurisdiction is given to the circuit and district courts by the eighth section; for no jurisdiction of cases at law or in equity relating to the estate, rights, or liabilities of the bankrupt is expressly given to the district court elsewhere than in the third clause of the second section; though this jurisdiction may be well enough held to be included in the general grant of the first section.

If this view is correct and the jurisdiction of the district court under the act spoken of in the eighth section is the jurisdiction defined by the third clause of the second section, the appellate jurisdiction by appeal and writ of error, from decisions in the exercise of that jurisdiction, must be regarded as limited to suits at law, or in equity, by assignees against persons claiming adverse interest, or by such persons against assignees. From these premises the necessary deduction is that the appellate jurisdiction, strictly so called, conferred upon the circuit courts, is limited to the controversies between assignees and the claimants of adverse interests and to controversies between assignees and creditor-claimants touching the allowance of claims. But there must be, obviously, numerous decisions by the district courts and district judges sitting at chambers, which are not included in either of these categories.

The order complained of in the petition is an example: It is not a decree in equity; nor a judgment at law; nor a rejection of claim in whole or part; nor an allowance of a claim. From this order, then, it is clear no appeal could be taken. On this point there seems to have been a misapprehension both of counsel and of the district judge; for an appeal was allowed, though not in time; and afterwards the time for filing the appeal bond was extended. Of this nothing more need be said now than that the right of appeal as given by the statute can neither be enlarged nor restricted by the district or the circuit court. The regulation of appeal is a regulation of jurisdiction. The circuit court has no jurisdiction of any appeal in any case, under the bankrupt act, from the district court, unless it is claimed and bond is filed, at the time it is claimed, and notice of it is given, as required by the eighth section of the act,

within ten days after the entry of the decree or decision appealed from; or unless it is entered at the term of the circuit court first held within and for the proper district next after the expiration of the ten days from the time it was claimed. This is mentioned here only to correct the misapprehension which seems to prevail, concerning the jurisdiction of this court upon appeals. Returning, then, to the order mentioned in the petition, and finding it as already stated to be one from which no appeal can be taken, the conclusion is inevitable that it is one which may be reviewed in the exercise of the power of general superintendence, or that it cannot be reviewed at all.

It may be said that the superintending jurisdiction does not extend to decisions of the district court, or of the district judge at chambers; and, certainly, if it does not extend to both, it extends to neither; for the first section of the act gives the same jurisdiction to the district judge at chambers as to the district court. This construction would limit the revisory jurisdiction of the circuit court to that given in the eighth section. But it is plain that this construction is not the correct one. It would, indeed, nullify the operation of the most important clause of the second section; for it would limit the superintending jurisdiction to the proceedings of assignees and registers; and these seem to be already placed by the first clause under the supervision of the district court. The better, and indeed as it seems to me the only construction which gives due effect to all parts of the act relating to revisory jurisdiction, seems to be that which on the one hand excludes from the category of general superintendence and jurisdiction of the circuit court the appellate jurisdiction defined by the eighth section; and on the other, brings within that category all decisions of the district court or the district judge at chambers, which cannot be reviewed upon appeal or writ of error under the provisions of that section. The exercise of this general jurisdiction is not placed by the act under specific regulations and restrictions like the proceeding by appeal or writ of error. It was doubtless thought most advisable to leave its regulations to the discretion of the court and to the rules to be prescribed by the supreme court. As yet, the supreme court has prescribed no rule concerning it; nor has this court. In the case before us, its exercise must depend on the sound discretion of this tribunal. Unreasonable delay in invoking the superintending jurisdiction should certainly not be allowed. Nor, on the other hand, should such excessive rigor be exercised that the ends of justice will probably be defeated. Leave is given to file the petition, and other questions are reserved until the coming in of affidavits; and in the meantime let further proceedings under the order of the district court be suspended.